Ronald E. Coleman, J.
The claim was duly filed and has not been submitted to any other court or tribunal for audit or determination. By the order of the court, the question of liability only was tried on this trial. Claim was made for personal injuries sustained by the claimant on May 25, 1963 sometime after 8:30 p.m. as the result of an alleged assault on him in a *423 poolroom in the City of Clean by five youths from the Great Valley Youth Opportunity and Youth Rehabilitation Center. Each week the head of the center in consultation with the counsellors compiled a list of boys whose conduct in their opinion had been such that they could be allowed to engage in outside social activities and visit local communities. On the evening of May 25, 10 such boys from the center, accompanied by a counsellor, went to the City of Olean. This same counsellor had taken other boys to Olean on three prior occasions. On this evening, the boys were taken to a place in front of the YMCA on South Union Street, arriving there at about 7:30 p.m., were instructed where they were allowed to go, told to return to the same place at 10:30 p.m., and then allowed to go on their own. The counsellor during the evening prior to the incident made three trips up and down Union and State Streets checking to see that the boys did not enter forbidden places, principally those serving alcoholic beverages.
Sometime after 8:30 p.m. five of the boys entered a poolroom located in an alley next to the Olean House on North Union Street, asked for the claimant by his nickname “Diffy” and when claimant identified himself it is claimed that one of the boys swung at him. Claimant attempted to protect himself but was struck by a fist and/or a pool cue or by both, knocking him out and causing his injuries. On the trial, neither the claimant nor any of the other witnesses were able to name or otherwise identify the boy or boys who allegedly struck the claimant. The witnesses testified that five boys came in the poolroom but that all five boys did not participate in the assault. However, all five boys were arrested and taken to the Olean Police Station that evening.
As far as we have been able to determine there is no reported or unreported case dealing with acts committed by boys from such a youth center. In determining the duty of the State in order to decide the question of liability, we first must examine into the type of facility maintained by the State at Great Valley from which the boys came. Pursuant to sections 500-502 of the Executive Law a Division For Youth was established in the Executive Department in 1960 (L. 1960, ch. 881). One of the functions of this division was ‘ ‘ To establish, operate, and maintain, or to contract with authorized agencies * * * for the operation and maintenance of youth opportunity and youth rehabilitation centers, in order to prevent delinquency and youth crime” (L. 1960, ch. 881; § 501, subd. 1). By chapter 831 of the Laws of 1963 the name of the centers was changed to Youth. Centers and will be so referred to hereinafter, At the time of *424 this incident boys conld be admitted to a youth center upon the written request of a duly authorized association, agency, society or institution which included any public welfare official authorized by law to care for, to place out or to board out children. Chapter 881 of the Laws of 1960 also provided that in accordance with rules and .regulations of the division, a youth could be admitted who had been placed on probation or after having been charged with commission of a crime. Prior to May 25, 1963 no regulations had been promulgated in respect to youth involved in criminal activities and no youths who had committed or been charged with a crime had been admitted to the youth center at Great Valley. Since that time the policy has been changed but that fact has no bearing on this claim. The age of the boys admitted to these centers were those who had reached the age of 15 years but had not reached the age of 18 years. While the law empowered the Division For Youth to make rules and regulations, none were submitted to us nor have we been able to find any that were in effect at the time of this incident governing any aspects of the conduct of these centers.
In order to better understand what the purpose was for the establishment of these centers, we quote from a memorandum of the Governor, dated April 27, 1960, issued by him on approving chapters 881-887 of the Laws of 1960 in which he said “ The youth opportunity center concept is novel and challenging. Essentially voluntary in nature, the centers will be forestry camps or residential facilities at which youths aged 15 to 18 who are in danger of becoming delinquent will receive schooling and learn good work habits in a healthy environment. Adoption of this concept represents an effort to curb delinquency at its inception. Our experience with the pilot youth opportunity centers which we shall establish will serve as a guide for a long-range approach to the problem of preventing juvenile delinquency.” (Public Papers of Gov. Rockefeller [1960] p. 554.)
The boys were not received at the Great Valley Youth Center for the purpose of incarceration but in the language of the statute “ for the care, treatment, education, rehabilitation and guidance of youths * * * whose behavior indicates they will benefit from the programs offered at such centers. ’’ (Executive Law, § 502.) It was never intended that the boys in these centers were to be locked up. The Great Valley center, while located in an isolated section of Cattaraugus County, was an open facility. While the boys placed there were not to leave the center without permission, they otherwise were not confined at the center. The boys at this time came principally from *425 broken or disturbed homes. The purpose of the centers was to train them for useful occupations and to endeavor to prepare them so that they could take their place in society. In so doing, the authorities in charge of the center arranged outside social activities and permitted them to go to nearby communities for visits. Whether any particular boy was allowed to do so depended upon his conduct and progress at the center. The director and counsellors each week discussed the individual boys and determined which ones were to be allowed to participate in the outside social activities.
In McPartland v. State of New York (277 App. Div. 103) the court discussed at some length the duty owed by the State in respect to the care of its wards and the general duty as therein enunciated applies equally to boys placed in a youth center. The court there said (p. 106): “ Since the Constitution does not admit a liability of the State more broadly based than would be a private liability in like case, the main question here is the applicable rule of tort on these facts. It is familiar doctrine that a man placed in a responsible situation must guard against a risk of danger to others where reasonable foresight would suggest a good chance of occurrence and reasonable care suggests steps in avoidance.” In the claim here before us, the State “ is held only to a duty of taking precautions against those risks ‘ reasonably to be perceived ’ * * * and if the community assumes the risk of accidental loss or damage ” (Excelsior Ins. Co. of N. Y. v. State of New York, 296 N. Y. 40, 46; Flaherty v. State of New York, 296 N. Y. 342).
In Flaherty v. State of New York (supra, p. 346) the court said: “ The law is clear; it is only in its application that difficulty is encountered. The State — just as any other party (Court of Claims Act, § 8, L. 1939, ch. 860) —is responsible, in the operation and management of its schools, hospitals and other institutions, only for hazards reasonably to be foreseen, only for risks reasonably to be perceived.” The test then in the claim before us is what could have been reasonably foreseen based upon what was known or should have been known at the time about the conduct of the boys involved in this incident.
Over the objection of the State we were liberal in the examination that we allowed the claimant to make of the records kept by the youth center. Records pursuant to a subpoena were produced for four of the boys involved in the alleged assault, and the records for the fifth boy, who had been discharged before the trial, were not produced as they had been returned to the agency sending him to the center. Claimant introduced in evidence summary sheets taken from the records of only two *426 of these boys. Both summary sheets were dated after the incident herein and contained information about the incident itself as well as information about events following it. Only one was of any possible aid to the claimant and that report was made on June 13,1963. Aside from the fact that it was not shown that the boy, the subject of this report, was the actual perpetrator of the alleged assault, the counsellor making the report had testified on the trial and it was not shown that the conduct of any of the 10 boys just prior to May 25, 1963 was such that they or any one of them should not have been allowed to go to Olean that night.
Admittedly, there had been the usual disciplinary problems with some boys in the center much the same as with any group of boys. There was a suggestion that on prior occasions when boys had left the center for an evening that there had been some problems, but none of which could be said to be of a serious nature such as an assault. No expert testimony was offered to show that the method of operating the center was not proper or that some other method of determining Avhat boys Avere to be allowed to leave the center for visits Avas customarily used or should have been used. The one report appears to have been written largely in context of the events of May 25, 1963, the subject of this claim. We cannot disregard completely the testimony of the director of the center and the counsellor in charge of the boys that evening and on this one report alone say that the youth center authorities could or should have reasonably perceived that one boy out of the 10 would cause injury to person or property in the community which he was allowed to visit on the evening of May 25.
There still remains the question of supervision of the boys on that night after they arrived in Olean. We find that one counsellor for 10 boys, the instructions given to the boys and the inspection trips made by the counsellor that evening prior to the incident constituted proper and adequate supervision under the facts of this claim.
On all the credible evidence we find that the claimant has failed to prove by a fair preponderance of the evidence any negligence on the part of the State which Avas a proximate contributing cause of the injuries sustained by him. The claim must be and hereby is dismissed.